**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BUNKER HILL TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VOLVO CAR CORPORATION,<br>VOLVO CAR USA LLC, and<br>POLESTAR PERFORMANCE AB,<br><br>Defendants. | Case No. 2:26-cv-00742<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT VOLVO CAR USA LLC'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Volvo Car USA LLC ("VCUSA")[1] files this Answer and Defenses to Plaintiff Bunker Hill Technologies, LLC's ("BHT" or "Plaintiff") Complaint for Patent Infringement (the "Complaint").[2]

**THE PARTIES**

1. Plaintiff Bunker Hill Technologies, LLC ("BHT") is a Texas limited liability company located in Allen, Texas.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

2. Defendant Volvo Car Corporation ("VCC") is a corporation organized and existing under the laws of Sweden with a principal place of business at VAK Building, Gunnar Engellaus väg 8, Göteborg, Sweden. On information and belief, VCC, directly or through its wholly owned

[1] Nothing in this Answer should be construed as a response on behalf of, or an admission by, Defendant Volvo Car Corporation or Defendant Polestar Performance AB. VCUSA responds solely on its own behalf, including as to allegations directed to "Volvo" or "Defendants" collectively.

[2] The headings of the Complaint for Patent Infringement are reproduced herein for the convenience of the Court. To the extent such headings include or infer allegations, they are denied.

subsidiaries, is responsible for research and development, manufacturing, sales, offers for sale, marketing, importation, and distribution of automotive vehicles from Volvo-managed brands in the United States, including this District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

3. VCC conducts business in the State of Texas and in the Eastern District of Texas, directly or through intermediaries, including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

4. VCC is engaged in making, using, selling, offering for sale, and/or importing Volvo-branded vehicles having electric or hybrid-electric powertrain systems (included in the "Accused Products")[1] to and throughout the United States, including this District. VCC also induces its subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, and customers in the making, using, selling, offering for sale, and/or importing such products to and throughout the United States, including this District. To this end, VCC and its foreign and U.S.- based subsidiaries—which act together as part of VCC's global network of sales and manufacturing emissaries—have operated as agents of, and for, one another and have otherwise acted vicariously for VCC as elements of the same business group and/or enterprise. Indeed, they work in concert and in orchestrated fashion, subject to agreements that are far nearer than arm's length, in order to implement a distribution channel of infringing products within this District and the United States. Footnote 1: The Accused Products include each Volvo-branded and Polestar-branded vehicle having electric or hybrid-electric powertrain systems. Specific models referenced herein are examples of such vehicles.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

5. On information and belief, VCC imports and/or ships Volvo-branded Accused Products and/or component parts of Volvo-branded Accused Products and accused systems into the United States. Source: https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.importinfo.com/volvo-car-corporation

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

6. Volvo-branded Accused Products (e.g., 2025 Volvo EX90) bear a U.S. vehicle certification label stating "MFD [(manufactured)] BY VOLVO CAR CORPORATION" and that the vehicles conform to applicable U.S. federal motor vehicle safety standards. See, e.g., https://www.volvocars.com/us/support/car/ex90/24w36/article/47d2c97fd33effd3c0a8cc3718c999b7-cf578f17ce837790c0a8b04a1abf9aaa-8664b2fa77a7e089c0a8296870d1a409/47d2c97fd33effd3c0a8cc3718c999b7-350655bc554de2a7c0a8b097561c9a50-8664b2fa77a7e089c0a8296870d1a409/0ed816eed33d98cac0a8cc377bc12bc7-395c564dc07493bbc0a8b0972ad70fe3-8664b2fa77a7e089c0a8296870d1a409/. This label demonstrates that VCC manufactured the Volvo-branded Accused Products for sale and use in the United States and participated in, directed, or caused its importation and placement into U.S. commerce.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

7. VCC maintains a substantial corporate presence in the United States, this State, and this District via at least its U.S.-based subsidiaries.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

8. Alone and through at least the activities of its U.S.-based subsidiaries, VCC conducts business in the United States and this District, including importing, making, distributing, and selling Volvo-branded Accused Products that infringe the Asserted Patents. See Trois v. Apple Tree Auction Center, Inc., 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc., 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

9. Through importation, manufacture, offers to sell, sales, distributions, and related agreements to transfer ownership of VCC's products with subsidiaries, distributors, and customers operating in and maintaining significant business presences in the United States, VCC does extensive business in the United States, this State, and this District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

10. VCC operates (and has operated) in agency with its respective foreign and U.S.- based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide a distribution channel of infringing products within this District and the U.S. nationally. VCC and/or its respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, purposefully direct (and has directed) the Volvo-branded Accused Products into established distribution channels within this District and the U.S. nationally.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

11. On information and belief, VCC, including its respective U.S. and foreign-based subsidiaries, employees, agents, distributors, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. VCC and its U.S. and foreign-based subsidiaries, employees, agents, distributors, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the Volvo-branded Accused Products that incorporate devices, systems, and processes that infringed the Asserted Patents in Texas and this District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

12. VCC and its subsidiaries operate through coordinated management, common ownership, common Volvo-branded advertising and customer-support platforms, integrated U.S. facilities, common distribution chains and dealer/financing platforms, and overlapping Volvo- branded infringing product lines and products involving related technologies. On information and belief, VCC operates (and has operated) as a single business entity and/or in concert with its affiliates,

distributors, subsidiaries, suppliers, retail partners, customers, and/or agents to manufacture, sell, offer to sell, import, market, advertise, and/or otherwise promote the Volvo- branded Accused Products in the United States, including in the State of Texas generally and this District in particular.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

13. On information and belief, VCC and its subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein. On information and belief, VCC and its subsidiaries operate as an integrated Volvo business enterprise with respect to the Volvo-branded Accused Products, and VCC is liable for the infringing acts alleged herein directly, vicariously, and/or through agency and alter-ego principles.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

14. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of VCC's Volvo-branded Accused Products by and/or to affiliates, distributors, subsidiaries, suppliers, business partners, retail partners, customers, and/or agents, VCC is operating in (and has operated in) and maintaining (and maintained) a significant business presence in the U.S. and/or through its U.S. subsidiaries or agents, VCC has done (and does) business in the U.S., the state of Texas, and in the Eastern District of Texas.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

15. Defendant Volvo Car USA LLC ("VCUSA") is a Delaware company with a regular and established place of business at 3434 McPherson Drive, Northlake, Texas 76226. On information and belief, VCUSA is an indirect wholly owned subsidiary of VCC. On information and belief, VCC established VCUSA for the purpose of strategic brand and customer development in the United States and to provide services, distribution, and sales to VCC's existing U.S. customers. See https://www.volvocars.com/us/media/press-releases/6B7E00F24A778995/ (describing VCUSA as a subsidiary of VCC "providing sales, marketing, parts, service, technology, and training support to Volvo automobile retailers in the United States since the 1950s."). VCUSA is engaged in making, using, selling, offering for sale, and/or importing Accused Products to and

throughout the United States, including this District. VCUSA may be served with process through its registered agent, C T Corporation System, 1999 Bryan St, Ste 900, Dallas, TX, 75201.

**ANSWER:** VCUSA admits that it is a Delaware limited liability company and that it may be served with process through its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201. VCUSA denies that it has committed any acts of patent infringement and denies the remaining allegations of Paragraph 15.

16. VCUSA maintains a substantial and established 48,000-square-foot facility in Northlake, Texas, known as its Dallas Distribution Center. Among other operations, VCUSA maintains a Battery Center at the Dallas Distribution Center that performs technical work directly relating to the electric vehicle systems accused in this action. See, e.g., https://jobs.volvocars.com/job/Northlake-Battery-Center-Technician-Lead-TX-76247/1402090233/ (repair, remanufacture, assembly, and testing of high-voltage battery packs, modules, and components performed at the Battery Center). Accordingly, VCUSA maintains within this District personnel, facilities, and technical operations directly concerning the electric vehicle technologies incorporated into Accused Products. Source: https://maps.app.goo.gl/teBkoXxkKVZApmLb7

**ANSWER:** VCUSA admits that it maintains a facility in Northlake, Texas. VCUSA denies the remaining allegations of Paragraph 16.

17. On information and belief, VCUSA is, and has been, an agent of VCC and/or controlled by VCC. See, e.g., https://investors.volvocars.com/en/results-and-reports/results-centre?page=/en/reports/volvo-car-ab-%28publ-%29-publishes-annual-and-sustainability-report-2025-2432113 (demonstrating VCC's global financial information includes the United States market (VCUSA)). For example, VCC "owns and operates, through its subsidiary Volvo Car USA LLC [] a plant for manufacturing of cars in Charleston in the United States of America." https://www.sec.gov/Archives/edgar/data/1884082/000188408225000012/ex_4155xps22-052p519manu.htm. As another example, VCUSA issues recalls "on behalf of the Volvo Car Corporation" to which recall-related decisions are "confirmed by Volvo Car Corporation." See, e.g., https://static.nhtsa.gov/odi/rcl/2025/RCRIT-25V104-1267.pdf; https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V071-1210.PDF. On information and belief, VCUSA provides (and has provided) sales, distribution, testing, research, and/or development support in the United States for its ultimate parent VCC, which indirectly wholly owns VCUSA.

At the direction and control of VCC, its subsidiaries, including VCUSA, have made, used, sold, offered for sale, and/or imported and continue to make, use, sell, offer for sale, and/or import Accused Products in the United States and this District. VCC and VCUSA are referred to herein collectively as "Volvo."

**ANSWER:** VCUSA denies that it is, or has been, the agent or alter ego of VCC, denies that it has committed any acts of patent infringement, and denies the remaining allegations of Paragraph 17.

18. Defendant Polestar Performance AB ("Polestar") is a corporation organized and existing under the laws of Sweden with a principal place of business at Assar Gabrielssons Väg 9, 405 31 Gothenburg, Sweden. On information and belief, Polestar is minority owned (roughly 20 percent) by VCC. See https://investors.polestar.com/news-releases/news-release-details/polestar-announces-updates-its-capital-structure-and-intention. On information and belief, Polestar, directly or through its wholly owned subsidiaries, is responsible for research and development, manufacturing, sales, offers for sale, marketing, importation, and distribution of Polestar-branded Accused Products in the United States, including this State.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

19. Polestar conducts business in the State of Texas, directly or through intermediaries, including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

20. Polestar is engaged in making, using, selling, offering for sale, and/or importing Polestar-branded vehicles having electric or hybrid-electric powertrain systems (included in the "Accused Products") to and throughout the United States, including this State. See, e.g., https://www.polestar.com/us/news/polestar-3-manufactured-in-usa/ (Polestar vehicles assembled in the United States). Polestar also induces its subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, and customers in the making, using, selling, offering for sale, and/or importing such products to and throughout the United States, including this District. To this end, Polestar and its foreign and U.S.-based subsidiaries—which act together as part of Polestar's global network of sales and manufacturing emissaries—have operated as agents of, and for, one another and have otherwise acted vicariously for Polestar as elements of the same business group

and/or enterprise. Indeed, they work in concert and in orchestrated fashion, subject to agreements that are far nearer than arm's length, in order to implement a distribution channel of infringing products within this District and the United States. See https://www.sec.gov/Archives/edgar/data/1884082/000119312522185122/d305041dex491.htm, pp. 3-4 (Polestar's agreement with VCUSA provides for Polestar to sell vehicles to VCUSA for importation into the United States, cause its U.S.-based subsidiary to purchase the imported vehicles and sell and distribute them to U.S. customers, and ensure compliance with applicable U.S. regulatory requirements).

**ANSWER:** To the extent the allegations are directed to VCUSA, they are denied. VCUSA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

21. Polestar maintains a substantial corporate presence in the United States and this State via at least its U.S.-based subsidiaries.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

22. Alone and through at least the activities of its U.S.-based subsidiaries and affiliates, Polestar conducts business in the United States and this State, including importing, making, distributing, and selling Polestar-branded Accused Products that infringe the Asserted Patents. See Trois v. Apple Tree Auction Center, Inc., 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc., 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

23. Through importation, manufacture, offers to sell, sales, distributions, and related agreements to transfer ownership of Polestar's products with subsidiaries, distributors, and customers operating in and maintaining significant business presences in the United States, Polestar does extensive business in the United States and this State.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

24. Polestar operates (and has operated) in agency with its respective foreign and U.S.- based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, to provide a distribution channel of infringing products within this State and the U.S. nationally. Polestar and/or its respective agents and foreign and U.S.-based subsidiaries, affiliates, distributors, retail partners, suppliers, and customers, purposefully direct (and has directed) the Polestar-branded Accused Products into established distribution channels within this State and the U.S. nationally.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

25. On information and belief, Polestar, including its respective U.S. and foreign-based subsidiaries, employees, agents, distributors, affiliates, business partners, retail partners, and customers (which act as part of a global network and supply chain of overseas sales and manufacturing subsidiaries), have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. Polestar and its U.S. and foreign-based subsidiaries, employees, agents, distributors, affiliates, business partners, retail partners, and/or customers, individually and/or in concert, conduct business (and have conducted business) in the United States, including importing, shipping, distributing, offering to sell, and selling the Polestar-branded Accused Products that incorporate devices, systems, and processes that infringed the Asserted Patents in Texas.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

26. Polestar and its subsidiaries and affiliates operate through coordinated management, common ownership, common Polestar-branded advertising and customer-support platforms, common distribution chains and dealer/financing platforms, and overlapping Polestar- branded infringing product lines and products involving related technologies. On information and belief, Polestar operates (and has operated) in concert with its affiliates, distributors, subsidiaries, suppliers, retail partners, customers, and/or agents to manufacture, sell, offer to sell, import, market, advertise, and/or otherwise promote the Polestar-branded Accused Products in the United States, including in the State of Texas generally and this District in particular.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

27. On information and belief, Polestar and its subsidiaries operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein. On information and belief, Polestar and its subsidiaries operate as an integrated Polestar business enterprise with respect to the Polestar-branded Accused Products, and Polestar is liable for the infringing acts alleged herein directly, vicariously, and/or through agency and alter-ego principles.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

28. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Polestar's Polestar-branded Accused Products by and/or to affiliates, distributors, subsidiaries, suppliers, business partners, retail partners, customers, and/or agents, Polestar is operating in (and has operated in) and maintaining (and maintained) a significant business presence in the U.S. and/or through its U.S. subsidiaries or agents, Polestar has done (and does) business in the U.S. and the state of Texas.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

29. On information and belief, Volvo and Polestar incorporate the same or substantially the same electric vehicle systems, components, architectures, and functionality in the Accused Products. Volvo and Polestar have jointly developed, shared, and/or utilized common vehicle platforms, hardware, software, and electric vehicle technologies, including Volvo-developed vehicle architectures and technology used in both Volvo and Polestar vehicles. See https://www.sec.gov/Archives/edgar/data/1884082/000188408224000008/psny-20231231.htm, pp. 16-17 ("Polestar benefits from the technological, engineering and manufacturing capabilities of Volvo Cars … Polestar's agreements with Volvo Cars cover research and development services, intellectual property licenses, purchasing, manufacturing engineering and logistics engineering and manufacturing … [and] design services …."); https://www.volvocars.com/us/media/press-releases/ADB2323DCE98F2BA/ (Volvo securing a battery supplier for "Volvo and Polestar models"); https://thedriven.io/vehicle/volvo-volvo-ex90/ (Volvo EX90 and Polestar 3 "utilising the same 111 kWh battery pack and dual-motor drivetrain"). For example, the Volvo EX90 and Polestar 3 utilize Volvo's SPA2 vehicle architecture and related electric vehicle technology, while

other Volvo and Polestar vehicles similarly share common platforms and systems. See https://www.polestar.com/us/news/polestar-3-nvidia-core-computer/ (Polestar 3 "underpinned by the Superset tech stack and SPA2 platform developed by our partner Volvo Cars."); see also https://investors.volvocars.com/~/media/Files/V/Volvo-Cars-IR/results-center/2018/volvoAR2018report.pdf (Volvo XC40 and Polestar 2 are "based on the same technology shared between Volvo Cars and Polestar."). Accordingly, on information and belief, the Accused Products incorporate the same or substantially the same electric vehicle charging, high-voltage distribution, battery management, and related systems relevant to the Asserted Patents.

**ANSWER:** To the extent the allegations are directed to VCUSA, they are denied. VCUSA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

30. This suit is commenced against all Defendants pursuant to 35 U.S.C. § 299 in a single action because, inter alia, as described above, the Volvo and Polestar Defendant entities share portions of research and development, engineering, logistics, purchasing, and manufacturing efforts to incorporate the same or substantially the same electric vehicle systems in the Accused Products. Accordingly, questions of fact common to all Defendants will arise in this action.

**ANSWER:** Paragraph 30 states legal conclusions to which no response is required. To the extent a response is required, however, VCUSA denies the allegations of Paragraph 30, including that Plaintiff has established a proper basis for joinder of all Defendants in a single action under 35 U.S.C. § 299.

## JURISDICTION AND VENUE

31. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** Paragraph 31 states legal conclusions to which no response is required. To the extent a response is required, however, VCUSA admits that the Complaint purports to state a claim for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., but denies that Plaintiff is entitled to any such relief. VCUSA denies that it has committed any acts of patent infringement. VCUSA denies the remaining allegations of Paragraph 31.

32. This Court has specific and general personal jurisdiction over VCC consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, VCC has engaged in continuous, systematic, and substantial business in Texas and has committed and continues to commit, directly or through intermediaries (including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State and this District. Such acts of infringement include making, using, testing, offering for sale, selling, and/or importing Volvo-branded Accused Products (as more particularly identified and described throughout this Complaint) in this State and this District and/or inducing others to commit acts of patent infringement in this State and District. Indeed, VCC has purposefully and voluntarily placed, and is continuing to place, one or more Volvo-branded Accused Products into the stream of commerce through established distribution channels (including the Internet) with the expectation and intent that such products will be sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that such products (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

33. In addition, VCC has facilities and employees in the United States. See, e.g., https://investors.volvocars.com/en/results-and-reports/results-centre?page=/en/reports/volvo-car-ab-%28publ-%29-publishes-annual-and-sustainability-report-2025-2432113 (VCC has "~2,800 Americas employees"); https://www.sec.gov/Archives/edgar/data/1884082/000188408225000012/ex_4155xps22-052p519manu.htm (VCC "owns and operates, through its subsidiary Volvo Car USA LLC [] a plant for manufacturing of cars in Charleston in the United States of America."); https://jobs.volvocars.com/search/?locationsearch=united+states (VCC's website listing job postings in the United States).

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

34. Upon information and belief, VCC compensates its U.S.-based subsidiaries and/or agents for their sales and/or support services in the United States. As such, VCC has a direct financial

interest in its U.S.-based subsidiaries and/or agents, and/or partners, distributors, or customers, and vice versa.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

35. In addition, VCC has derived substantial revenues from its infringing acts occurring within this State and this District. VCC has substantial business in this State and this District, including (i) at least part of its infringing activities alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

36. On information and belief, VCC controls (or has controlled) or otherwise directs (or has directed) and authorizes (or has authorized) all activities of its U.S.-based (or foreign-based with the knowledge that the Volvo-branded Accused Products are directed to the United States and this District) agents and/or sales and/or distribution subsidiaries. Such directed and authorized activities include the U.S.-based (and/or foreign-based) subsidiaries' and/or agents having used, offered for sale, sold, and/or imported the Volvo-branded Accused Products, their components, processes, and/or products containing the same that incorporated the fundamental technologies and claims of the Asserted Patents. VCC's U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries and/or agents were authorized to import, distribute, sell, or offer for sale the Volvo-branded Accused Products on behalf of VCC. For example, VCC researched, designed, developed, and manufactured the Volvo-branded Accused Products, and then directed its U.S.-based (and/or foreign-based) sales subsidiaries, distributors, business partners, agents, and/or others to import, distribute, offer for sale, and sell the Volvo-branded Accused Products in the United States. See, e.g., Am. Patents LLC v. D-Link Corp., Civil Action No. 4:19-cv-764, 2020 U.S. Dist. LEXIS 123158, at 15* (E.D. Tex. July 14, 2020) ("It is enough, for a prima facie case, that [defendant] appears to have had a role in orchestrating—through its wholly owned subsidiary—the accused products' placement in the stream of commerce.") (emphasis in original); see also United States v. Hui Hsiung, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to

third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Thus, VCC conducted infringing activities, and VCC's U.S.-based (and foreign-based) sales subsidiaries and/or distributors and/or agents and/or business partners conducted infringing activities on behalf of VCC.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

37. On information and belief, VCC's U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries' and/or agents' presence (including in the past) in the United States gave VCC substantially the same business advantages that it would have enjoyed if VCC conducted its business through its own offices or paid agents. VCC's U.S.-based (and/or foreign-based) sales subsidiaries and/or distributors and/or agents were authorized to import, distribute, sell, and offer for sale VCC's products, including the Volvo-branded Accused Products, as well as their components and processes related to the same, on behalf of VCC. For example, VCC's U.S.-based (and/or foreign-based) sales subsidiaries and/or agents operated within VCC's global network and supply chain of sales. In the U.S., including within the Eastern District of Texas, the Volvo-branded Accused Products, as well as their components and processes related to the same, were imported, distributed, offered for sale, and/or sold.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

38. Via VCC's alter egos, agents, business partners, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers that maintained a business presence, operating in, and/or residing in the U.S., VCC's products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in Texas including within this District. See Litecubes, LLC v. Northern Light Products, Inc., 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); see also Semcon IP Inc. v. Kyocera Corp., No. 2:18-CV-00197-JRG, 2019 U.S. Dist. LEXIS 74904, at 6-8* (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently pleaded that purchases of infringing products outside of the United States for importation into and sales to customers in the U.S. may constitute a sale or an offer to sell under § 271(a)).

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

39. On information and belief, VCC has placed infringing products and/or products that practiced infringing processes into the stream of commerce via established distribution channels comprising at least its subsidiaries, business partners, affiliates, distributors, and/or agents or customers, with the knowledge and/or intent that those products were imported, used, offered for sale, and sold in the United States and Texas, including in this District. As a result, VCC has, vicariously through and/or in concert with alter egos, agents, intermediaries, distributors, affiliates, importers, customers, subsidiaries, and/or consumers, placed the Volvo-branded Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

40. The minimum contacts test is satisfied because VCC delivers its products (e.g., Volvo-branded vehicles) into the stream of commerce with the expectation that they will be purchased by consumers in Texas. Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559 (1980)); see also Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd., No. 2:23-CV-00449-JRG, 2024 U.S. Dist. LEXIS 189038, at *8-9 (E.D. Tex. Oct. 16, 2024). For example, and on information and belief (and as provided for herein), VCC imports, and/or has imported and/or shipped infringing Volvo-branded Accused Products into the United States through and with its supply chain partners and/or agents, including, but not limited to, VCC subsidiaries and/or affiliates and/or agents, such as VCUSA. VCC supplies its Volvo-branded Accused Products to its customers, subsidiaries, affiliates, agents, and/or distributors knowing that its Volvo-branded Accused Products are offered for sale, sold, imported, and/or used by VCC, its customers, subsidiaries, affiliates, and/or agents in the United States and this District. The Volvo-branded Accused Products were (and are) directed to this District and were (and are) available for purchase in this District via dealerships. The lengthy and complex distribution chain does not insulate VCC from suit in Texas.

**ANSWER:** To the extent the allegations are directed to VCUSA, they are denied. VCUSA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

41. VCC intentionally placed its Volvo-branded vehicles in a distribution chain flowing from Europe to the United States, Texas, and this District. For example, VCC intentionally places its Volvo-branded vehicles in a distribution or supply chain knowing that such Volvo-branded vehicles (e.g., 2025 Volvo EX90) ultimately arrive in the United States market and this District through, at least, its direct and indirect customers such as dealerships. VCC, through its sales of Volvo-branded vehicles downstream knew (or should have reasonably known) the likely destination of the products, where VCC's conduct and connections with Texas and this District were such that VCC should have reasonably anticipated being brought to court in this District. Indeed, vehicles manufactured by VCC include a statement that the vehicles conform to applicable federal motor vehicle safety standards indicating compliance with the laws and regulations of the United States further evidencing that VCC knew or should have known that its products were destined for the United States and this District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

42. Moreover, VCC is the assignee of a substantial number of United States patents and patent applications, including use of U.S. patent counsel to procure such patents in their name. Thus, VCC sought out the United States market, evidenced by seeking patent protection in the United States.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

43. VCC, including through its U.S.-based subsidiaries, has and had commercial relationships with a significant number of dealerships, and VCC accesses the Texas vehicle market vis-à-vis these relationships. Given VCC's relationship with such dealerships, jurisdiction in this Court is fair and reasonable. VCC also accesses the U.S. and Texas vehicle markets through Volvo Car Financial Services U.S., LLC ("VCFS"), VCC's captive finance entity. On information and belief, VCFS is wholly owned by VCC and provides financing services to authorized VCC dealerships and customers in the United States, including from its Dallas, Texas operations. See https://www.volvocars.com/us/media/press-releases/6B7E00F24A778995/. Through VCFS,

VCUSA, and authorized Volvo dealerships, VCC facilitates the offer for sale, sale, lease, financing, distribution, and use of Volvo-branded Accused Products in the United States and Texas.

**ANSWER:** To the extent the allegations are directed to VCUSA, they are denied. VCUSA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

44. Also by way of example, and on information and belief, VCC has (and has had) U.S.-based (and/or foreign-based) employees that work in connection with the Volvo-branded Accused Products, including, but not limited to, employees affiliated with VCUSA.

**ANSWER:** To the extent the allegations are directed to VCUSA, they are denied. VCUSA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore denies them.

45. In addition, VCC, directly or through its wholly owned subsidiaries, has knowingly induced, and continues to knowingly induce, infringements within this State and this District by advertising, marketing, offering for sale and/or selling Volvo-branded Accused Products (as more particularly identified and described throughout this Complaint) that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Volvo-branded Accused Products is directed to consumers, customers, manufacturers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct and encourage use of infringing functionality with VCC's knowledge thereof.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

46. VCC has, in the multitude of ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. VCC also has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

47. In the alternative, the Court has personal jurisdiction over VCC under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, VCC is not subject to the jurisdiction of the courts of general jurisdiction of any state and exercising jurisdiction over VCC is consistent with the U.S. Constitution. Exercising jurisdiction comports with due process given VCC's purposeful availment from the sales of Volvo- branded Accused Products in the Unites States, this State, and this District.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

48. Venue is proper in this District under 28 U.S.C. § 1391 because, among other things, VCC is a foreign corporation and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

49. This Court has specific and general personal jurisdiction over VCUSA consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, VCUSA: (i) has engaged in continuous, systematic, and substantial business in Texas; (ii) maintains a place of business in Texas and in this District; (iii) is registered to do business in Texas; and (iv) has committed, and continues to commit, directly or through intermediaries (including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State and this District. Such acts of infringement include making, using, testing, offering for sale, selling, and/or importing Accused Products (as more particularly identified and described throughout this Complaint) in this State and this District and/or inducing others to commit acts of patent infringement in this State and District. Indeed, VCUSA has purposefully and voluntarily placed, and continues to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the expectation and intent that such products will be sold to, and purchased by, consumers in the United States, this State, and this District; and with the knowledge and expectation that such products (whether in standalone form or as integrated in downstream products) will be imported into and/or sold within the United States, this State, and this District.

**ANSWER:** Paragraph 49 states legal conclusions to which no response is required. To the extent a response is required, however, VCUSA does not dispute personal jurisdiction for the

purposes of this action only. VCUSA denies that it has committed any acts of patent infringement in this State or this District and denies the remaining allegations of Paragraph 49.

50. Venue is proper as to VCUSA in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other things: (i) VCUSA is subject to personal jurisdiction in this District; (ii) VCUSA has committed acts of patent infringement in this District; and (iii) VCUSA has at least one regular and established place of business in this District, including at 3434 McPherson Drive, Northlake, Texas 76226.

**ANSWER:** Paragraph 50 states legal conclusions to which no response is required. To the extent a response is required, however, VCUSA does not dispute venue for the purposes of this action only. VCUSA denies that it has committed any acts of patent infringement in this District and denies the remaining allegations of Paragraph 50.

51. This Court has specific and general personal jurisdiction over Polestar consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, among other things, Polestar has engaged in continuous, systematic, and substantial business in Texas and has committed and continues to commit, directly or through intermediaries (including subsidiaries, agents, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State. Such acts of infringement include making, using, testing, offering for sale, selling, and/or importing Polestar-branded Accused Products (as more particularly identified and described throughout this Complaint) in this State and/or inducing others to commit acts of patent infringement in this State and District. Indeed, Polestar has purposefully and voluntarily placed, and is continuing to place, one or more Polestar-branded Accused Products into the stream of commerce through established distribution channels (including the Internet) with the expectation and intent that such products will be sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that such products (whether in standalone form or as integrated in downstream products) will be imported into the United States and this State. See, e.g., https://www.sec.gov/Archives/edgar/data/1884082/000119312522185122/d305041dex491.htm (Polestar actively orchestrating importation and sales of Polestar-branded Accused Products in the United States).

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

52. Upon information and belief, Polestar compensates its U.S.-based subsidiaries and/or agents for their sales and/or support services in the United States. As such, Polestar has a direct financial interest in its U.S.-based subsidiaries and/or agents, and/or partners, distributors, or customers, and vice versa.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

53. In addition, Polestar has derived substantial revenues from its infringing acts occurring within this State. Polestar has substantial business in this State, including (i) at least part of its infringing activities alleged herein and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

54. On information and belief, Polestar controls (or has controlled) or otherwise directs (or has directed) and authorizes (or has authorized) all activities of its U.S.-based (or foreign-based with the knowledge that the Polestar-branded Accused Products are directed to the United States and this State) agents and/or sales and/or distribution subsidiaries. Such directed and authorized activities include the U.S.-based (and/or foreign-based) subsidiaries' and/or agents having used, offered for sale, sold, and/or imported the Polestar-branded Accused Products, their components, processes, and/or products containing the same that incorporated the fundamental technologies and claims of the Asserted Patents. Polestar's U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries and/or agents were authorized to import, distribute, sell, or offer for sale the Polestar-branded Accused Products on behalf of Polestar. For example, Polestar researched, designed, developed, and manufactured the Polestar-branded Accused Products, and then directed its U.S.-based (and/or foreign-based) sales subsidiaries, distributors, business partners, agents, and/or others to import, distribute, offer for sale, and sell the Polestar-branded Accused Products in the United States. See, e.g., Am. Patents LLC v. D-Link Corp., Civil Action No. 4:19-cv-764, 2020 U.S. Dist. LEXIS 123158, at 15* (E.D. Tex. July 14, 2020) ("It is enough, for a prima facie

case, that [defendant] appears to have had a role in orchestrating—through its wholly owned subsidiary—the accused products' placement in the stream of commerce.") (emphasis in original); see also United States v. Hui Hsiung, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Thus, Polestar conducted infringing activities, and Polestar's U.S.-based (and foreign-based) sales subsidiaries and/or distributors and/or agents and/or business partners conducted infringing activities on behalf of Polestar.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

55. On information and belief, Polestar's U.S.-based (and/or foreign-based) sales and/or distribution subsidiaries' and/or agents' presence (including in the past) in the United States gave Polestar substantially the same business advantages that it would have enjoyed if Polestar conducted its business through its own offices or paid agents. Polestar's U.S.-based (and/or foreign-based) sales subsidiaries and/or distributors and/or agents were authorized to import, distribute, sell, and offer for sale Polestar's products, including the Polestar-branded Accused Products, as well as their components and processes related to the same, on behalf of Polestar. For example, Polestar's U.S.-based (and/or foreign-based) sales subsidiaries and/or agents operated within Polestar's global network and supply chain of sales. In the U.S., including within Texas, the Polestar-branded Accused Products, as well as their components and processes related to the same, were imported, distributed, offered for sale, and/or sold.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

56. Via Polestar's alter egos, agents, business partners, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers that maintained a business presence, operating in, and/or residing in the U.S., Polestar's products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in Texas. See Litecubes, LLC v. Northern Light Products, Inc., 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); see also Semcon IP Inc. v. Kyocera Corp., No. 2:18-CV-00197-JRG, 2019 U.S. Dist. LEXIS 74904, at 6-8* (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently pleaded that

purchases of infringing products outside of the United States for importation into and sales to customers in the U.S. may constitute a sale or an offer to sell under § 271(a)).

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

57. On information and belief, Polestar has placed infringing products and/or products that practiced infringing processes into the stream of commerce via established distribution channels comprising at least its subsidiaries, business partners, affiliates, distributors, and/or agents or customers, with the knowledge and/or intent that those products were imported, used, offered for sale, and sold in the United States and Texas, including in this District. As a result, Polestar has, vicariously through and/or in concert with alter egos, agents, intermediaries, distributors, affiliates, importers, customers, subsidiaries, and/or consumers, placed the Polestar- branded Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

58. The minimum contacts test is satisfied because Polestar delivers its products (e.g., Polestar-branded vehicles) into the stream of commerce with the expectation that they will be purchased by consumers in Texas. Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559 (1980)); see also Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd., No. 2:23-CV-00449-JRG, 2024 U.S. Dist. LEXIS 189038, at *8-9 (E.D. Tex. Oct. 16, 2024). For example, and on information and belief (and as provided for herein), Polestar imports, and/or has imported and/or shipped infringing Polestar-branded Accused Products into the United States through and with its supply chain partners and/or agents, including, but not limited to, Polestar subsidiaries and/or affiliates and/or agents. Polestar supplies its Polestar-branded Accused Products to its customers, subsidiaries, affiliates, agents, and/or distributors knowing that its Polestar-branded Accused Products are offered for sale, sold, imported, and/or used by Polestar, its customers, subsidiaries, affiliates, and/or agents in the United States and this District. The Polestar-branded Accused Products were (and are) directed to this State and were (and are) available for purchase in this State via dealerships. The lengthy and complex distribution chain does not insulate Polestar from suit in Texas.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

59. Polestar intentionally placed its Polestar-branded vehicles in a distribution chain flowing from Europe to the United States and Texas. For example, Polestar intentionally places its Polestar-branded vehicles in a distribution or supply chain knowing that such Polestar-branded vehicles (e.g., 2025 Polestar 3) ultimately arrive in the United States market and this State through, at least, its direct and indirect customers such as dealerships. Polestar, through its sales of Polestar- branded vehicles downstream knew (or should have reasonably known) the likely destination of the products, where Polestar's conduct and connections with Texas were such that Polestar should have reasonably anticipated being brought to court in this District. Indeed, vehicles manufactured by Polestar include a statement that the vehicles conform to applicable federal motor vehicle safety standards indicating compliance with the laws and regulations of the United States further evidencing that Polestar knew or should have known that its products were destined for the United States and this State.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

60. Polestar, including through its U.S.-based subsidiaries and affiliates, has and had commercial relationships with dealerships, and Polestar accesses the Texas vehicle market vis-à- vis these relationships. Given Polestar's relationship with such dealerships, jurisdiction in this Court is fair and reasonable. Polestar also accesses the U.S. and Texas vehicle markets through VCFS d/b/a Polestar Financial Services, the captive finance entity that provides Polstar with financing and account services. On information and belief, VCFS provides financing services to authorized Polestar dealerships and customers in the United States, including from its Dallas, Texas operations. See https://www.polestarfinancialservices.com/about/company-overview. Through VCFS and authorized Polestar dealerships, Polestar facilitates the offer for sale, sale, lease, financing, distribution, and use of Polestar-branded Accused Products in the United States and Texas.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

61. In addition, Polestar, directly or through its wholly owned subsidiaries, has knowingly induced, and continues to knowingly induce, infringements within this State and this District by

advertising, marketing, offering for sale and/or selling Polestar-branded Accused Products (as more particularly identified and described throughout this Complaint) that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Polestar-branded Accused Products is directed to consumers, customers, manufacturers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct and encourage use of infringing functionality with Polestar's knowledge thereof.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

62. Polestar has, in the multitude of ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Polestar also has sufficient minimum contacts with this forum through its transaction of substantial business in this State and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

63. In the alternative, the Court has personal jurisdiction over Polestar under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Polestar is not subject to the jurisdiction of the courts of general jurisdiction of any state and exercising jurisdiction over Polestar is consistent with the U.S. Constitution. Exercising jurisdiction comports with due process given Polestar's purposeful availment from the sales of Polestar-branded Accused Products in the Unites States and this State.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

64. Venue is proper in this District under 28 U.S.C. § 1391 because, among other things, Polestar is a foreign corporation and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

## THE ASSERTED PATENTS AND TECHNOLOGY

65. BHT is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Indeed, BHT owns all substantial rights in the Asserted Patents, including the right to exclude others and to recover damages for all past, present, and future infringements.

**ANSWER:** VCUSA admits that the records of the United States Patent and Trademark Office reflect a quitclaim assignment of the Asserted Patents from Edison Innovations LLC to BHT, executed on September 18, 2025, and recorded on April 9, 2026, at Reel/Frame 74326/0549. VCUSA denies that BHT is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and denies the remaining allegations of Paragraph 65.

66. The ’364 Patent is entitled, “System and method for operation of electric and hybrid vehicles.” The ’364 Patent lawfully issued on December 27, 2011 and stems from U.S. Patent Application No. 12/719,921, which was filed on March 9, 2010.

**ANSWER:** VCUSA admits that, on its face, U.S. Patent No. 8,086,364 (the “’364 Patent”) is entitled “System and method for operation of electric and hybrid vehicles,” was issued on December 27, 2011, and stems from U.S. Patent Application No. 12/719,921, filed on March 9, 2010. VCUSA denies the remaining allegations of Paragraph 66.

67. The ’467 Patent is entitled, “Controller and method of controlling a power system.” The ’467 Patent lawfully issued on December 4, 2012 and stems from U.S. Patent Application No. 13/225,975, which was filed on September 6, 2011.

**ANSWER:** VCUSA admits that, on its face, U.S. Patent No. 8,326,467 (the “’467 Patent”) is entitled “Controller and method of controlling a power system,” was issued on December 4, 2012, and stems from U.S. Patent Application No. 13/225,975, filed on September 6, 2011. VCUSA denies the remaining allegations of Paragraph 67.

68. The ’668 Patent is entitled, “Method and apparatus for charging multiple energy storage devices.” The ’668 Patent lawfully issued on November 21, 2017 and stems from U.S. Patent Application No. 14/656,782, which was filed on March 13, 2015.

**ANSWER:** VCUSA admits that, on its face, U.S. Patent No. 9,821,668 (the “’668 Patent”) is entitled “Method and apparatus for charging multiple energy storage devices,” was issued on November 21, 2017, and stems from U.S. Patent Application No. 14/656,782, filed on March 13, 2015. VCUSA denies the remaining allegations of Paragraph 68.

69. The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

**ANSWER:** Denied.

**DEFENDANT'S PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENT**

70. Prior to filing this Complaint, Volvo was put on notice of its infringements of the Asserted Patents by way of communication with BHT's licensing agent, including a letter addressed to Helen Hu (General Counsel, Volvo) and an email addressed to Milan Patel (IP Director, Volvo), regarding a potential license to BHT assets as early as October 14, 2025.

**ANSWER:** VCUSA admits that BHT sent one or more letters to Helen Hu around October 2025. VCUSA denies that any communication placed VCUSA on notice of any infringement of the Asserted Patents and otherwise denies the remaining allegations.

71. BHT's licensing agent sent a letter on April 7, 2026 to Volvo personnel, including Helen Hu (General Counsel), that included claim charts for the Asserted Patents that evidenced and demonstrated Volvo's infringement and identified specific infringing Volvo products.

**ANSWER:** VCUSA admits that BHT sent one or more letters to Volvo around April 2026. VCUSA denies that any communication demonstrated Volvo's infringement and otherwise denies the remaining allegations.

72. On April 9, 2026, BHT's licensing agent further sent via email to Volvo personnel, including Helen Hu and Robert Sullivan, that included the April 7, 2026 letter and referenced the claim charts attached thereto.

**ANSWER:** VCUSA admits that BHT sent one or more emails to Volvo around April 2026. VCUSA denies the remaining allegations.

73. Volvo responded to BHT's letter(s) on May 4, 2026 requesting claim charts. That same day, BHT sent via email to Volvo the requested claim charts as attachments and provided access to a data room containing the claim charts.

**ANSWER:** VCUSA admits that Volvo sent one or more communications to BHT requesting claim charts and that BHT sent one or more emails to Volvo around May 2026.

74. BHT and Volvo participated in ongoing discussions regarding a potential license, including having a telephonic conference that took place on July 9, 2026.

**ANSWER:** VCUSA admits that BHT and Volvo communicated regarding BHT's offer to license, including around July 2026.

75. Prior to filing this Complaint, Polestar was put on notice of its infringements of the Asserted Patents by way of a letter sent by BHT's licensing agent addressed to Polestar personnel, Anna Rudensjö (Chief Legal Officer), identifying the Asserted Patents as being infringed by specific Polestar vehicles.

**ANSWER:** VCUSA lacks knowledge or information sufficient to form a belief about the truth of these allegations and therefore denies them.

76. The Accused Products addressed in the Counts below include, but are not limited to, products identified in BHT's communications to Defendants. Defendants' past and continuing sales of the Accused Products (i) willfully infringe the Asserted Patents, and (ii) impermissibly usurp the significant benefits of BHT's patented technologies without fair compensation.

**ANSWER:** Denied.

77. To the extent necessary, BHT has complied with the requirements of 35 U.S.C. § 287, such that BHT may recover pre-suit damages.

**ANSWER:** Denied.

## COUNT I

## (INFRINGEMENT OF U.S. PATENT NO. 8,086,364)

78. BHT incorporates the preceding paragraphs herein by reference.

**ANSWER:** Paragraph 78 of the Complaint merely repeats and re-alleges the allegations in the preceding paragraphs of the Complaint. VCUSA therefore incorporates its responses to the allegations of those paragraphs as if fully set forth herein.

79. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, et seq.

**ANSWER:** Paragraph 79 states legal conclusions to which no response is required. To the extent a response is required, however, VCUSA denies the allegations of Paragraph 79.

80. BHT is the owner of all substantial rights, title, and interest in and to the '364 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

**ANSWER:** VCUSA admits that the records of the United States Patent and Trademark Office reflect a quitclaim assignment of the '364 Patent from Edison Innovations LLC to BHT,

executed on September 18, 2025, and recorded on April 9, 2026, at Reel/Frame 74326/0549. VCUSA denies that BHT is the owner of all substantial rights, title, and interest in and to the '364 Patent and denies the remaining allegations of Paragraph 80.

81. The ’364 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 27, 2011, after full and fair examination.

**ANSWER:** VCUSA admits that, on its face, the ’364 Patent reflects that it was issued by the United States Patent and Trademark Office on December 27, 2011. VCUSA denies that the ’364 Patent is valid or enforceable and denies the remaining allegations of Paragraph 81.

***Direct Infringement (35 U.S.C. § 271(a))***

82. Defendants directly infringe one or more claims of the ’364 Patent in this District and elsewhere in Texas and the United States.

**ANSWER:** Denied.

83. Defendants directly infringe, either by themselves individually or via their agent(s), alter egos, intermediaries, distributors, importers, and/or subsidiaries, at least claim 9 of the ’364 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Volvo-branded and Polestar-branded electric vehicles that incorporate the fundamental technologies covered by the ’364 Patent, including, but not limited to, Volvo-branded and Polestar-branded vehicles (e.g., the 2025 Volvo EX90) equipped with electric and/or hybrid-electric powertrain systems (collectively, “the ’364 Accused Products”).

**ANSWER:** Denied.

84. On information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to their customers, agents, intermediaries, distributors, importers, and/or subsidiaries in the United States, or in the case that they delivered the Accused Products outside of the United States they did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the ’364 Patent. See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc., 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013); see also Semcon IP Inc. v. Kyocera Corp., No. 2:18-CV-00197-JRG, 2019 U.S. Dist. LEXIS 74904, at 6-8* (E.D. Tex. May 3, 2019). Furthermore, Defendants directly infringed the ’364 Patent through their direct involvement in the activities of their subsidiaries, including VCUSA, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused

Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the ’364 Patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, their distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of their U.S.-based subsidiaries, e.g., VCUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, VCC and its subsidiaries are essentially the same company, Polestar and its subsidiaries are essentially the same company, and Defendants have the right and ability to control their subsidiaries’ infringing acts and receive a direct financial benefit from the infringement of their U.S.-based subsidiaries.

**ANSWER:** Denied.

85. Defendants offer to sell Accused Products in the United States via at least Defendants’ websites. Defendants’ websites market Accused Products to U.S. consumers, identify current offers and incentives, provide build-and-price functionality, direct consumers to nearby authorized dealer inventory, and enable consumers to request dealer pricing or otherwise proceed towards purchasing or leasing Accused Products. See generally https://www.volvocars.com/us/ and https://www.polestar.com/us/. These platforms are part of Defendants’ integrated U.S. sales channel for Defendants’ benefit and under Defendants’ direction or control.

**ANSWER:** Denied.

86. By way of illustration only, Defendants’ ’364 Accused Products satisfy each and every element of claim 9 of the ’364 Patent. Defendants perform via the ’364 Accused Products “[a] method of energy management of an electric or hybrid-electric vehicle comprising: identifying a current location of a vehicle.” For example, Defendants via the ’364 Accused Products identify the vehicle’s current location using GPS. Source: https://www.caranddriver.com/volvo/ex90-2025 Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

87. Defendants via the ’364 Accused Products perform a method of energy management of an electric or hybrid-electric vehicle comprising “applying a pre-screening algorithm with respect to a link within a map and the current location, the pre-screening algorithm based on a maximum link

length of a historical power-use database." For example, Defendants via the '364 Accused Products gather data (e.g., EV range, energy consumption) associated with links within a map and apply a pre-screening algorithm (e.g., a best-first search algorithm) based on a maximum link length (e.g., links near a navigation route) of the vehicle's historical power-use database to determine whether the vehicle requires stopping at a charging station along a route. Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.howardorloffvolvocars.com/2025-volvo-ex90-chicago.htm Source: https://www.youtube.com/watch?v=ZewuOULwkoo

**ANSWER:** Denied.

88. Defendants via the '364 Accused Products perform a method of energy management of an electric or hybrid-electric vehicle comprising "determining if one or more links are within a given bounds." For example, Defendants via the '364 Accused Products determine if a link (e.g., road segment to charging station) is within a given bounds (e.g., whether the link is close to the navigation route). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.youtube.com/watch?v=ZewuOULwkoo

**ANSWER:** Denied.

89. Defendants via the '364 Accused Products perform a method of energy management of an electric or hybrid-electric vehicle comprising, if one or more links are within a given bounds, then "matching the current location of the vehicle to the link within the map via a subsequential matching algorithm." For example, Defendants via the '364 Accused Products match the vehicle's current location and the link within the map to gather the vehicle data that is relevant to a navigation route (e.g., vehicle range and power consumption) and to determine whether the vehicle must stop at a charging station along the navigation route (i.e., matching the current location of the vehicle to the link within the map via a subsequential matching algorithm). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.howardorloffvolvocars.com/2025-volvo-ex90-chicago.htm Source: https://www.youtube.com/watch?v=hxRQU7eVHS4

**ANSWER:** Denied.

90. Defendants via the ’364 Accused Products perform a method of energy management of an electric or hybrid-electric vehicle comprising, if one or more links are within a given bounds, then “uploading power information used by the vehicle along the link and at the current location into the historical power-use database.” For example, Defendants via the ’364 Accused Products upload power information (e.g., state of charge) used by the vehicle along the link and at the current location into the historical power-use database. Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.youtube.com/watch?v=ZewuOULwkoo

**ANSWER:** Denied.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

91. In addition and/or in the alternative to the direct infringements, Defendants indirectly infringe one or more claims of the ’364 Patent by knowingly and intentionally inducing others, including their agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and/or other end users, to directly infringe the ’364 Patent (e.g., by charging or otherwise using ’364 Accused Products).

**ANSWER:** Denied.

92. At a minimum, Defendants have had knowledge of the ’364 Patent at least since service of this Complaint. Defendants also have had knowledge of the ’364 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Defendants to their infringements. Since receiving notice of their infringements, Defendants have actively induced, and continue to actively induce, the direct infringements of their agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and/or other end users (e.g., as illustrated above) as set forth under 35 U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the ’364 Patent. Indeed, Defendants have intended to cause, continue to intend to cause, and have taken, and continue to take, affirmative steps to induce infringement by, among other things, instructing, directing, authorizing, approving, creating, and/or disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.volvocars.com/us/support/ and https://www.polestar.com/us/manual/), and online instructional materials (e.g., those available via https://www.youtube.com/@VolvoCars and

https://www.youtube.com/polestarcars) that specifically teach and encourage agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and other end users to use the ’364 Accused Products in an infringing manner, including by providing instructions on how to use navigation for ’364 Accused Products. Affirmative steps to induce infringement further include providing captive financing, leasing, customer financing, account servicing, retailer support, and related financial services that specifically facilitate, enable, and encourage vehicle transactions involving the ’364 Accused Products, including transactions by retail partners, dealerships, customers, lessees, and other end users to offer for sale, sell, lease, use (including through leasing), purchase, and otherwise acquire the ’364 Accused Products. See, e.g., https://www.volvocars.com/us/media/press-releases/6B7E00F24A778995/ (VCFS “provides financial services products to Volvo consumers and Volvo retailers in the United States”); https://www.polestarfinancialservices.com/about/company-overview. By providing such directives, authorization, approval, instructions, financing, and support, Defendants know (and have known), or should know (and should have known), that their actions have actively induced, and continue to actively induce, infringement of the ’364 Patent.

**ANSWER:** Denied.

93. On information and belief, despite having knowledge of the ’364 Patent and their infringement, Defendants specifically intended for others to import and sell products accused of infringing the ’364 Patent. For example, Defendants specifically intended for their U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the ’364 Patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the ’364 Patent. On information and belief, the purchase and sale agreements between Defendants and the subsidiaries, importers, or customers provide such instruction and/or encouragement. See, e.g., https://www.sec.gov/Archives/edgar/data/1884082/000119312522185122/d305041dex491.htm . Further, on information and belief, Defendants’ U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for, inter alia, the purpose of importing and selling products accused of infringing the ’364 Patent in the United States. In another example, Defendants actively induced agents, intermediaries, distributors, importers, subsidiaries, customers, and/or other end users that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with vehicle

labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. See, e.g., supra ¶ 6.

**ANSWER:** Denied.

***Damages***

94. BHT has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to BHT in an amount that adequately compensates BHT for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:** Denied.

95. Despite having knowledge of the '364 Patent and knowledge that they directly and/or indirectly infringe one or more claims of the '364 Patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '364 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '364 Patent, justifying enhanced damages under 35 U.S.C. § 284.

**ANSWER:** Denied.

**COUNT II**

**(INFRINGEMENT OF U.S. PATENT NO. 8,326,467)**

96. BHT incorporates the preceding paragraphs herein by reference.

**ANSWER:** Paragraph 96 of the Complaint merely repeats and re-alleges the allegations in the preceding paragraphs of the Complaint. VCUSA therefore incorporates its responses to the allegations of those paragraphs as if fully set forth herein.

97. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, et seq.

**ANSWER:** Paragraph 97 states legal conclusions to which no response is required. To the extent a response is required, however, VCUSA denies the allegations of Paragraph 97.

98. BHT is the owner of all substantial rights, title, and interest in and to the '467 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

**ANSWER:** VCUSA admits that the records of the United States Patent and Trademark Office reflect a quitclaim assignment of the '467 Patent from Edison Innovations LLC to BHT,

executed on September 18, 2025, and recorded on April 9, 2026, at Reel/Frame 74326/0549. VCUSA denies that BHT is the owner of all substantial rights, title, and interest in and to the '467 Patent and denies the remaining allegations of Paragraph 98.

99. The ’467 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 4, 2012, after full and fair examination.

**ANSWER:** VCUSA admits that, on its face, the ’467 Patent reflects that it was issued by the United States Patent and Trademark Office on December 4, 2012. VCUSA denies that the ’467 Patent is valid or enforceable and denies the remaining allegations of Paragraph 99.

***Direct Infringement (35 U.S.C. § 271(a))***

100. Defendants directly infringe one or more claims of the ’467 Patent in this District and elsewhere in Texas and the United States.

**ANSWER:** Denied.

101. Defendants directly infringe, either by themselves individually or via their agent(s), alter egos, intermediaries, distributors, importers, and/or subsidiaries, at least claim 16 of the ’467 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Volvo-branded and Polestar-branded electric vehicles that incorporate the fundamental technologies covered by the ’467 Patent, including, but not limited to, Volvo-branded and Polestar-branded vehicles (e.g., the 2025 Volvo EX90) equipped with electric and/or hybrid-electric powertrain systems (collectively, “the ’467 Accused Products”).

**ANSWER:** Denied.

102. On information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to their customers, agents, intermediaries, distributors, importers, and/or subsidiaries in the United States, or in the case that they delivered the Accused Products outside of the United States they did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the ’467 Patent. See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc., 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013); see also Semcon IP Inc. v. Kyocera Corp., No. 2:18-CV-00197-JRG, 2019 U.S. Dist. LEXIS 74904, at 6-8* (E.D. Tex. May 3, 2019). Furthermore, Defendants directly infringed the ’467 Patent through their direct involvement in the activities of their subsidiaries, including VCUSA, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused

Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the ’467 Patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, their distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of their U.S.-based subsidiaries, e.g., VCUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, VCC and its subsidiaries are essentially the same company, Polestar and its subsidiaries are essentially the same company, and Defendants have the right and ability to control their subsidiaries’ infringing acts and receive a direct financial benefit from the infringement of their U.S.-based subsidiaries.

**ANSWER:** Denied.

103. Defendants offer to sell Accused Products in the United States via at least Defendants’ websites. Defendants’ websites market Accused Products to U.S. consumers, identify current offers and incentives, provide build-and-price functionality, direct consumers to nearby authorized dealer inventory, and enable consumers to request dealer pricing or otherwise proceed towards purchasing or leasing Accused Products. See generally https://www.volvocars.com/us/ and https://www.polestar.com/us/. These platforms are part of Defendants’ integrated U.S. sales channel for Defendants’ benefit and under Defendants’ direction or control.

**ANSWER:** Denied.

104. By way of illustration only, Defendants’ ’467 Accused Products satisfy each and every element of claim 16 of the ’467 Patent. Defendants perform via the ’467 Accused Products “[a] method of controlling a power system.” For example, Defendants perform via the ’467 Accused Products a method of controlling a power system through the charging timer feature. Source: https://www.caranddriver.com/volvo/ex90-2025 Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

105. Defendants perform via the ’467 Accused Products a method of controlling a power system comprising “determining, by a first controller, an operating condition of at least one first power system component and at least one second power system component of a plurality of power system components within the power system, wherein the at least one second power system component

includes a power storage device switchable between a power storage mode of operation and a power supply mode of operation." For example, the '467 Accused Products determine, by an engine control module (ECM) (i.e., first controller), an operating condition (e.g., charging conditions) of the vehicle charging system (i.e., a first power system component) and the vehicle high-voltage battery (i.e., a second power system component), wherein the vehicle high-voltage battery is switchable between a charging mode (i.e., a power storage mode of operation) and a driving mode (i.e., a power supply mode). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.volvopartscounter.com/oem-parts/volvo-control-module-32436091

**ANSWER:** Denied.

106. Defendants perform via the '467 Accused Products a method of controlling a power system comprising "identifying a predetermined time for completing a charging operation of the power storage device." For example, Defendants via the '467 Accused Products identify a predetermined time (i.e., end time) for completing a charging operation of the high-voltage battery. Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

107. Defendants perform via the '467 Accused Products a method of controlling a power system comprising "determining whether a switching of the power storage device from the power storage mode of operation to the power supply mode of operation will prevent the charging operation from completing within the predetermined time." For example, Defendants via the '467 Accused Products determine whether a switching of the battery from the charging mode to the driving mode of operation at the departure time will prevent the charging operation from completing within the predetermined time. Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

108. Defendants perform via the '467 Accused Products a method of controlling a power system comprising "determining, by the first controller, whether a predetermined condition is met based on at least one operating condition." For example, Defendants via the '467 Accused Products determine, by the first controller (i.e., ECM), whether a predetermined condition (i.e., battery reaching full charge) is met based on at least one operating condition (i.e., the charging state of the

battery). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

109. Defendants perform via the '467 Accused Products a method of controlling a power system comprising "transmitting, by the first controller, a command to at least one second controller to at least one of electrically couple the at least one first power system component to the at least one second power system component and electrically decouple the at least one first power system component from the at least one second power system component based on whether the predetermined condition is met." For example, Defendants via the '467 Accused Products transmit, by the first controller (i.e., ECM), a command to at least one second controller (i.e., power delivery module) to decouple the first power system component (i.e., charging system) from the second power system component (i.e., high-voltage battery) based on whether the predetermined condition (i.e., battery reaching full charge) is met. Source: https://www.volvopartscounter.com/oem-parts/volvo-control-module-32436091 Source: https://www.volvodealerparts.com/oem-parts/volvo-vehicle-power-control-module- 32443403

**ANSWER:** Denied.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

110. In addition and/or in the alternative to the direct infringements, Defendants indirectly infringe one or more claims of the '467 Patent by knowingly and intentionally inducing others, including their agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and/or other end users, to directly infringe the '467 Patent (e.g., by charging or otherwise using '467 Accused Products).

**ANSWER:** Denied.

111. At a minimum, Defendants have had knowledge of the '467 Patent at least since service of this Complaint. Defendants also have had knowledge of the '467 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Defendants to their infringements. Since receiving notice of their infringements, Defendants have actively induced, and continue to actively induce, the direct infringements of their agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and/or other end users (e.g., as illustrated above) as set forth under 35 U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute

infringement of the ’467 Patent. Indeed, Defendants have intended to cause, continue to intend to cause, and have taken, and continue to take, affirmative steps to induce infringement by, among other things, instructing, directing, authorizing, approving, creating, and/or disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.volvocars.com/us/support/ and https://www.polestar.com/us/manual/), and online instructional materials (e.g., those available via https://www.youtube.com/@VolvoCars and https://www.youtube.com/polestarcars) that specifically teach and encourage agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and other end users to use the ’467 Accused Products in an infringing manner, including the charge scheduling feature. Affirmative steps to induce infringement further include providing captive financing, leasing, customer financing, account servicing, retailer support, and related financial services that specifically facilitate, enable, and encourage vehicle transactions involving the ’467 Accused Products, including transactions by retail partners, dealerships, customers, lessees, and other end users to offer for sale, sell, lease, use (including through leasing), purchase, and otherwise acquire the ’467 Accused Products. See, e.g., https://www.volvocars.com/us/media/press-releases/6B7E00F24A778995/ (VCFS “provides financial services products to Volvo consumers and Volvo retailers in the United States”); https://www.polestarfinancialservices.com/about/company-overview. By providing such directives, authorization, approval, instructions, financing, and support, Defendants know (and have known), or should know (and should have known), that their actions have actively induced, and continue to actively induce, infringement of the ’467 Patent.

**ANSWER:** Denied.

112. On information and belief, despite having knowledge of the ’467 Patent and their infringement, Defendants specifically intended for others to import and sell products accused of infringing the ’467 Patent. For example, Defendants specifically intended for their U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the ’467 Patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the ’467 Patent. On information and belief, the purchase and sale agreements between Defendants and the subsidiaries, importers, or customers provide such instruction and/or encouragement. See, e.g.,

https://www.sec.gov/Archives/edgar/data/1884082/000119312522185122/d305041dex491.htm . Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for, inter alia, the purpose of importing and selling products accused of infringing the '467 Patent in the United States. In another example, Defendants actively induced agents, intermediaries, distributors, importers, subsidiaries, customers, and/or other end users that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with vehicle labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. See, e.g., supra ¶ 6.

**ANSWER:** Denied.

***Damages***

113. BHT has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to BHT in an amount that adequately compensates BHT for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:** Denied.

114. Despite having knowledge of the '467 Patent and knowledge that they directly and/or indirectly infringe one or more claims of the '467 Patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '467 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '467 Patent, justifying enhanced damages under 35 U.S.C. § 284.

**ANSWER:** Denied.

**COUNT III**

**(INFRINGEMENT OF U.S. PATENT NO. 9,821,668)**

115. BHT incorporates the preceding paragraphs herein by reference.

**ANSWER:** Paragraph 115 of the Complaint merely repeats and re-alleges the allegations in the preceding paragraphs of the Complaint. VCUSA therefore incorporates its responses to the allegations of those paragraphs as if fully set forth herein.

116. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, et seq.

**ANSWER:** Paragraph 116 states legal conclusions to which no response is required. To the extent a response is required, however, VCUSA denies the allegations of Paragraph 116.

117. BHT is the owner of all substantial rights, title, and interest in and to the ’668 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

**ANSWER:** VCUSA admits that the records of the United States Patent and Trademark Office reflect a quitclaim assignment of the '668 Patent from Edison Innovations LLC to BHT, executed on September 18, 2025, and recorded on April 9, 2026, at Reel/Frame 74326/0549. VCUSA denies that BHT is the owner of all substantial rights, title, and interest in and to the '668 Patent and denies the remaining allegations of Paragraph 117.

118. The ’668 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on November 21, 2017, after full and fair examination.

**ANSWER:** VCUSA admits that, on its face, the ’668 Patent reflects that it was issued by the United States Patent and Trademark Office on November 21, 2017. VCUSA denies that the ’668 Patent is valid or enforceable and denies the remaining allegations of Paragraph 118.

***Direct Infringement (35 U.S.C. § 271(a))***

119. Defendants directly infringe one or more claims of the ’668 Patent in this District and elsewhere in Texas and the United States.

**ANSWER:** Denied.

120. Defendants directly infringe, either by themselves individually or via their agent(s), alter egos, intermediaries, distributors, importers, and/or subsidiaries, at least claim 16 of the ’668 Patent as set forth under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing Volvo-branded and Polestar-branded electric vehicles that incorporate the fundamental technologies covered by the ’668 Patent, including, but not limited to, Volvo-branded and Polestar-branded vehicles (e.g., the 2025 Volvo EX90) equipped with electric and/or hybrid-electric powertrain systems (collectively, “the ’668 Accused Products”).

**ANSWER:** Denied.

121. On information and belief, Defendants sold and made some Accused Products outside of the United States, delivered those products to their customers, agents, intermediaries, distributors, importers, and/or subsidiaries in the United States, or in the case that they delivered the Accused Products outside of the United States they did so intending and/or knowing that those products

were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the ’668 Patent. See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc., 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013); see also Semcon IP Inc. v. Kyocera Corp., No. 2:18-CV-00197-JRG, 2019 U.S. Dist. LEXIS 74904, at 6-8* (E.D. Tex. May 3, 2019). Furthermore, Defendants directly infringed the ’668 Patent through their direct involvement in the activities of their subsidiaries, including VCUSA, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the ’668 Patent under 35 U.S.C. § 271(a) by having made, used, tested, offered for sale, sold, and/or imported those Accused Products. On information and belief, Defendants offered for sale, sold, and imported the Accused Products within the U.S. to, for example, their distributors, customers, subsidiaries, importers, and/or consumers. Further, Defendants are vicariously liable for this infringing conduct of their U.S.-based subsidiaries, e.g., VCUSA, (under both the alter ego and agency theories) because, as an example and on information and belief, VCC and its subsidiaries are essentially the same company, Polestar and its subsidiaries are essentially the same company, and Defendants have the right and ability to control their subsidiaries’ infringing acts and receive a direct financial benefit from the infringement of their U.S.-based subsidiaries.

**ANSWER:** Denied.

122. Defendants offer to sell Accused Products in the United States via at least Defendants’ websites. Defendants’ websites market Accused Products to U.S. consumers, identify current offers and incentives, provide build-and-price functionality, direct consumers to nearby authorized dealer inventory, and enable consumers to request dealer pricing or otherwise proceed towards purchasing or leasing Accused Products. See generally https://www.volvocars.com/us/ and https://www.polestar.com/us/. These platforms are part of Defendants’ integrated U.S. sales channel for Defendants’ benefit and under Defendants’ direction or control.

**ANSWER:** Denied.

123. By way of illustration only, Defendants’ ’668 Accused Products comprise each and every element of claim 16 of the ’668 Patent. The ’668 Accused Products comprise “[a]n energy storage and management system (ESMS) for a vehicle propulsion system, the ESMS comprising: a plurality of energy storage devices including: a first energy storage device; and a second energy

storage device." For example, the '668 Accused Products include an energy storage and management system (ESMS) for a vehicle propulsion system comprising a 12-Volt battery (i.e., a first energy storage device) and a high voltage EV battery (i.e., a second energy storage device). Source: https://www.caranddriver.com/volvo/ex90-2025 Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

124. The '668 Accused Products comprise an ESMS comprising "a plurality of DC/DC conversion devices including: a first DC/DC conversion device coupleable to an external charging device and configured to charge the plurality of energy storage devices." For example, the '668 Accused Products include a plurality of DC/DC conversion devices, including a Boost DC-DC Converter in the AC Charging Subsystem (i.e., a first DC/DC conversion device) coupleable to an AC Charging Input (i.e., an external charging device) and configured to charge the 12-Volt battery and high voltage EV battery (i.e., plurality of energy storage devices). Source: https://www.volvopartscounter.com/oem-parts/volvo-battery-charger-ob-36012239 Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.volvocars.com/us/media/documents/0fa238764cad45829247b33e001cfd98/ Source: https://ieeexplore.ieee.org/document/10215092 Source: https://www.monolithicpower.com/learning/resources/designing-onboard-chargers-for- high-performance-and-power-density

**ANSWER:** Denied.

125. The '668 Accused Products comprise an ESMS comprising a plurality of DC/DC conversion devices including "a second DC/DC conversion device coupleable to an internal charging device and configured to charge the plurality of energy storage devices." For example, the '668 Accused Products include a plurality of DC/DC conversion devices, including a second DC-DC Converter (i.e., a second DC/DC conversion device) coupleable to the electric motor during regenerative braking (i.e., an internal charging device) and configured to charge the 12-Volt battery and high voltage EV battery (i.e., plurality of energy storage devices). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://usparts.volvocars.com/p/Volvo_2025_EX90/Hybrid-Voltage-

Converter/132452955/36010867.html Source: https://www.volvodealerparts.com/oem-parts/volvo-drive-motor-battery-pack-36011833 Source: https://usparts.volvocars.com/p/Volvo_2025_EX90/Vehicle- Battery/109272765/31652681.html

**ANSWER:** Denied.

126. The ’668 Accused Products comprise an ESMS comprising a plurality of DC/DC conversion devices including “a third DC/DC conversion device coupled to the second DC/DC conversion device.” For example, the ’668 Accused Products include a plurality of DC/DC conversion devices, including a Buck DC-DC Converter (i.e., a third DC/DC conversion device) coupled to the second DC-DC Converter (i.e., the second DC/DC conversion device). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.volvocars.com/lb/news/articles/the-award-winning-ex90-just-levelled-up- with-faster-charging-and-new-advanced-features/ Source: https://ieeexplore.ieee.org/document/10215092

**ANSWER:** Denied.

127. The ’668 Accused Products comprise an ESMS comprising “a plurality of switching devices including: a first switching device and a second switching device coupled to a common junction that has a common path to the first energy storage device.” For example, the ’668 Accused Products include a plurality of switching devices, including a relay/contactor/transistor in the AC charging subsystem (i.e., a first switching device) and a transistor in the motor control unit (MCU)/vehicle control unit (VCU) (i.e., a second switching device) coupled to a common junction (i.e., HV DC Bus) that has a common path to the 12-volt battery (i.e., the first energy storage device). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://usparts.volvocars.com/p/Volvo_2025_EX90/Drive-Motor-Inverter-Front--Rear/146011535/36003942.html

**ANSWER:** Denied.

128. The ’668 Accused Products comprise an ESMS comprising “the first switching device being between the common junction and the external charging device via a first path that does not include the second switching device.” For example, in the ’668 Accused Products, the relay/contactor/transistor in the AC charging subsystem (i.e., first switching device) is between the

HV DC Bus (i.e., the common junction) and the AC Charging Input (i.e., external charging device) via a first path that does not include the transistor in the motor control unit (MCU)/vehicle control unit (VCU) (i.e., second switching device). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

129. The '668 Accused Products comprise an ESMS comprising "the second switching device being between the common junction and the internal charging device via a second path that does not include the first switching device." For example, in the '668 Accused Products, the transistor in the motor control unit (MCU)/vehicle control unit (VCU) (i.e., second switching device) is between the HV DC Bus (i.e., the common junction) and the electric motor during regenerative braking (i.e., an internal charging device) via a second path that does not include the relay/contactor/transistor in the AC charging subsystem (i.e., first switching device). Source: https://usparts.volvocars.com/p/Volvo_2025_EX90/Drive-Motor-Inverter-Front--Rear/146011535/36003942.html

**ANSWER:** Denied.

130. The '668 Accused Products comprise an ESMS comprising a plurality of switching devices including "a third switching device coupled between the second energy storage device and the third DC/DC conversion device." For example, the '668 Accused Products include a plurality of switching devices, including a Contactor (i.e., a third switching device) coupled between the high voltage EV battery (i.e., second energy storage device) and the Buck DC-DC Converter (i.e., third DC/DC conversion device).

**ANSWER:** Denied.

131. The '668 Accused Products comprise an ESMS comprising "a control system configured to: selectively control operation of the first DC/DC conversion device and at least one switching device when charging the first and second energy storage devices from the external charging device." For example, the '668 Accused Products include a vehicle control system with multiple electric control units (ECUs) (collectively a "control system") configured to selectively control operation of the Boost DC-DC Converter in the AC Charging Subsystem (i.e., a first DC/DC conversion device) and a relay/contactor/transistor in the AC charging subsystem (i.e., at least one switching device) when charging the 12-volt battery and high voltage EV battery (i.e., first and second energy storage devices) from the AC Charging Input (i.e., external charging device).

Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/ Source: https://www.volvocars.com/us/media/documents/0fa238764cad45829247b33e001cfd98/

**ANSWER:** Denied.

132. The ’668 Accused Products comprise an ESMS comprising a control system configured to “selectively control operation of the second and third DC/DC conversion devices and at least one switching device when charging the first and second energy storage devices from the internal charging device.” For example, the control system of the ’668 Accused Products is configured to selectively control operation of the second DC-DC Converter (i.e., a second DC/DC conversion device) and the Buck DC-DC Converter (i.e., third DC/DC conversion device) and a relay/contactor/transistor in the AC charging subsystem (i.e., at least one switching device) when charging the 12-volt battery and high voltage EV battery (i.e., first and second energy storage devices) from the electric motor during regenerative braking (i.e., an internal charging device). Source: 2025 Volvo EX90 User Manual, available at https://www.volvocars.com/us/support/car/ex90/24w36/article/

**ANSWER:** Denied.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

133. In addition and/or in the alternative to the direct infringements, Defendants indirectly infringe one or more claims of the ’668 Patent by knowingly and intentionally inducing others, including their agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and/or other end users, to directly infringe the ’668 Patent (e.g., by charging or otherwise using ’668 Accused Products).

**ANSWER:** Denied.

134. At a minimum, Defendants have had knowledge of the ’668 Patent at least since service of this Complaint. Defendants also have had knowledge of the ’668 Patent since receiving detailed correspondence from BHT prior to the filing of the Complaint, alerting Defendants to their infringements. Since receiving notice of their infringements, Defendants have actively induced, and continue to actively induce, the direct infringements of their agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and/or other end users (e.g., as illustrated above) as set forth under 35 U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute

infringement of the ’668 Patent. Indeed, Defendants have intended to cause, continue to intend to cause, and have taken, and continue to take, affirmative steps to induce infringement by, among other things, instructing, directing, authorizing, approving, creating, and/or disseminating advertisements and instructive materials that promote the infringing use of the Accused Products, including marketing materials, user manuals (e.g., those available via https://www.volvocars.com/us/support/ and https://www.polestar.com/us/manual/), and online instructional materials (e.g., those available via https://www.youtube.com/@VolvoCars and https://www.youtube.com/polestarcars) that specifically teach and encourage agents, intermediaries, distributors, importers, subsidiaries, dealerships, customers, and other end users to use the ’668 Accused Products in an infringing manner, including by providing instructions on how to charge ’668 Accused Products. Affirmative steps to induce infringement further include providing captive financing, leasing, customer financing, account servicing, retailer support, and related financial services that specifically facilitate, enable, and encourage vehicle transactions involving the ’668 Accused Products, including transactions by retail partners, dealerships, customers, lessees, and other end users to offer for sale, sell, lease, use (including through leasing), purchase, and otherwise acquire the ’668 Accused Products. See, e.g., https://www.volvocars.com/us/media/press-releases/6B7E00F24A778995/ (VCFS “provides financial services products to Volvo consumers and Volvo retailers in the United States”); https://www.polestarfinancialservices.com/about/company-overview. By providing such directives, authorization, approval, instructions, financing, and support, Defendants know (and have known), or should know (and should have known), that their actions have actively induced, and continue to actively induce, infringement of the ’668 Patent.

**ANSWER:** Denied.

135. On information and belief, despite having knowledge of the ’668 Patent and their infringement, Defendants specifically intended for others to import and sell products accused of infringing the ’668 Patent. For example, Defendants specifically intended for their U.S.-based (and/or foreign-based) subsidiaries or customers to import and sell products accused of infringing the ’668 Patent. On information and belief, Defendants instructed and encouraged the importers or customers to import and/or sell products accused of infringing the ’668 Patent. On information and belief, the purchase and sale agreements between Defendants and the subsidiaries, importers, or customers provide such instruction and/or encouragement. See, e.g.,

https://www.sec.gov/Archives/edgar/data/1884082/000119312522185122/d305041dex491.htm . Further, on information and belief, Defendants' U.S.-based (and/or foreign-based) subsidiaries, affiliates, employees, agents, and/or related companies existed for, inter alia, the purpose of importing and selling products accused of infringing the '668 Patent in the United States. In another example, Defendants actively induced agents, intermediaries, distributors, importers, subsidiaries, customers, and/or other end users that have purchased, imported, used, offered for sale, and/or sold Accused Products in the U.S. by marking the Accused Products with vehicle labels indicating compliance with U.S. laws and regulations for the Accused Products destined and intended to be sold in the U.S. See, e.g., supra ¶ 6.

**ANSWER:** Denied.

***Damages***

136. BHT has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to BHT in an amount that adequately compensates BHT for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:** Denied.

137. Despite having knowledge of the '668 Patent and knowledge that they directly and/or indirectly infringe one or more claims of the '668 Patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '668 Patent have, thus, been, and continue to be, willful, wanton, and deliberate in disregard of BHT's rights with respect to the '668 Patent, justifying enhanced damages under 35 U.S.C. § 284.

**ANSWER:** Denied.

## CONCLUSION

138. BHT is entitled to recover from Defendants the damages sustained by BHT as a result of Defendants' wrongful acts and willful infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

**ANSWER:** Denied.

139. BHT has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the

meaning of 35 U.S.C. § 285, and, in such case, BHT is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

**ANSWER:** Denied.

## JURY DEMAND

140. BHT hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**ANSWER:** Paragraph 140 recites Plaintiff's Demand for Jury Trial, for which no response is required. To the extent a response is required, VCUSA requests a trial by jury on all issues in this action so triable.

## PRAYER FOR RELIEF

141. BHT respectfully requests that the Court find in its favor and against Defendants, and that the Court grant BHT the following relief: (i) Judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendants; (ii) Judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Defendants; (iii) Judgment that Defendants account for and pay to BHT all damages and costs incurred by BHT because of Defendants' infringements and other conduct complained of herein, including an accounting for any sales or damages not presented at trial; (iv) Judgment that Defendants account for and pay to BHT a reasonable, ongoing, post- judgment royalty because of Defendants' infringements, including continuing infringing activities, and other conduct complained of herein; (v) Judgment that BHT be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringements and other conduct complained of herein; (vi) Judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and (vii) Such other and further relief as the Court deems just and equitable.

**ANSWER:** Paragraph 141 recites Plaintiff's Prayer for Relief, for which no response is required. To the extent a response is required, VCUSA denies that Plaintiff is entitled to any of the requested relief or to any other remedy or relief.

## DEFENSES AND AFFIRMATIVE DEFENSES

Without any admission as to the burden of proof, burden of persuasion, or the truth of any allegation in the Complaint, VCUSA relies upon the following defenses. Discovery and

investigation are ongoing, and VCUSA reserves the right to amend its Answer and add additional Defenses and Affirmative Defenses.

**FIRST DEFENSE**

**(Non-Infringement)**

VCUSA does not infringe and has not infringed any valid and enforceable claim of the Asserted Patents, either literally or under the doctrine of equivalents, by direct, contributory, or induced infringement, willfully or otherwise.

**SECOND DEFENSE**

**(Invalidity)**

The claims of the Asserted Patents are invalid for failure to satisfy one or more of the conditions and requirements for patentability set forth in 35 U.S.C. §§ 101 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 282, or under the judicially created doctrines of invalidity or unenforceability.

**THIRD DEFENSE**

**(No Willful Infringement)**

VCUSA has not and does not willfully infringe any valid and enforceable claim of the Asserted Patents.

**FOURTH DEFENSE**

**(No Indirect Infringement)**

Plaintiff cannot establish the knowledge, specific intent, affirmative acts, or underlying direct infringement required to state a claim for induced or contributory infringement of the Asserted Patents.

**FIFTH DEFENSE**

**(No Exceptional Case)**

Plaintiff is not entitled to increased damages pursuant to 35 U.S.C. § 284 nor attorney fees and costs pursuant to 35 U.S.C. § 285, or any other applicable statutes.

**SIXTH DEFENSE**

**(Laches, Estoppel, Waiver, Acquiescence, and Unclean Hands)**

Plaintiff's claims are barred by one or more of the doctrines of laches, estoppel, waiver, acquiescence, and unclean hands from enforcing or claiming damages with respect to any claim of the Asserted Patents.

**SEVENTH DEFENSE**

**(Doctrine of Equivalents and Prosecution History Estoppel)**

Plaintiff's claims are barred under the doctrine of prosecution history estoppel from asserting any scope of the Asserted Patents that would cover the Accused Products because of statements and amendments made during prosecution of the applications that led to the Asserted Patents.

**EIGHTH DEFENSE**

**(Relief Not in the Public Interest)**

The relief sought by Plaintiff does not and would not further the public interest, and there are strong public reasons for denying Plaintiff the relief sought.

**NINTH DEFENSE**

**(Limitations on Damages per 35 U.S.C. §§ 286 and 287)**

Any claim for damages for patent infringement is limited by 35 U.S.C. §§ 286 and 287, including to only those damages occurring after Plaintiff's notice of infringement.

**TENTH DEFENSE**

**(Reservation of Additional Affirmative Defenses)**

VCUSA presently has insufficient knowledge or information upon which to form a belief as to whether it may have additional, yet unstated, affirmative defenses. As such, VCUSA reserves the right to assert additional affirmative defenses in the event discovery indicates that additional affirmative defenses are appropriate.

**EXCEPTIONAL CASE**

Plaintiff has, in bad faith, knowingly undertaken to enforce the Asserted Patents against VCUSA while knowing that the Asserted Patents are unenforceable, invalid, or not infringed. Based upon the foregoing conduct of Plaintiff, this is an exceptional case under 35 U.S.C. § 285. As a result of Plaintiff's conduct, as alleged above, VCUSA is entitled to recover its attorney fees.

**DEMAND FOR JURY TRIAL**

VCUSA requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, VCUSA respectfully requests the following relief:

a) that all claims against VCUSA be dismissed with prejudice and that all relief requested by Plaintiff be denied;

b) that an order be entered declaring that the Asserted Patents are not infringed;

c) that an order be entered declaring that the Asserted Patents are invalid;

d) that a judgment be entered that this case is exceptional under 35 U.S.C. § 285, and accordingly that VCUSA is entitled to recover its reasonable attorneys' fees and costs upon prevailing in this action; and

e) that VCUSA be awarded such other relief that the Court deems just and equitable, or which the Court deems necessary and proper.

Dated: October 30, 2026

Respectfully submitted,

By: */s/ Kyrie K. Cameron*
B. Todd Patterson
Texas State Bar No. 00789537
tpatterson@pattersonsheridan.com

Kyrie K. Cameron
Texas Bar No. 24097450
kcameron@pattersonsheridan.com

Austin Hale Gray
Texas Bar No. 24136870
Email: agray@pattersonsheridan.com

Archibald Cruz
Texas Bar No. 24137564
Email: acruz@pattersonsheridan.com

**Patterson + Sheridan LLP**
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
Telephone: 713-623-4844
Facsimile: 713-623-4846

*Counsel for Volvo Car Corporation, Volvo Car USA LLC, and Polestar Performance AB*

**CERTIFICATE OF SERVICE**

I certify that on October 30, 2026, the foregoing document was filed electronically with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing ("ECF") system of the court. The attorneys of record who have consented in writing to accept notice as service of this document by electronic means are being served by a "Notice of Electronic Filing," sent by the ECF system.

*/s/ Kyrie K. Cameron*
Kyrie K. Cameron